ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2023-Mar-07 12:29:20
60CV-23-1690
C06D06 : 11 Pages

## IN THE CIRCUIT COURT OF PULASKI COUNTY

| | |
|---|---|
| DIANE NGUYEN, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KUNAL MANMEET, LLC, d/b/a VAPOR PLANET, PARWINDER SINGH<br>Defendants | Case No. _____<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

### CLASS ACTION COMPLAINT

Plaintiff, by and through counsel, alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

### INTRODUCTION

1. Plaintiff purchased D8 vape pens from the Defendants. Each Defendant manufactures distributes, markets, and sells D8 Vape pens in Faulkner County (The Product) warranted as compliant with the Hemp Farming Act of 2018, meaning that these products contain no more than .3% D9 THC by dry weight. This representation is false.

2. The representations are misleading because they give consumers like the Plaintiffs and the Class the impression the Product contains a legal amount of actual D9 ingredients but the Product contains an illegal amount of D9.

### D8 v. D9

3. D9 THC is the psychoactive component of what is commonly known as marijuana.

4. D8 THC is also psychoactive, but D8 THC is hemp derived and is not a controlled substance under federal law. If D8 THC is produced, D9 THC is also produced.

5. Each Plaintiff files this suit under the Arkansas state law. Each Plaintiff also seeks redress under the Magnusson Moss Act.

1

6. The Hemp Farming Act of 2018 removed hemp (defined as cannabis with less than 0.3% THC) from Schedule I controlled substances and making it an ordinary agricultural commodity. Its provisions were incorporated in the 2018 United States farm bill that became law on December 20, 2018.

7. Then, the interim final rule entitled "Implementation of the Agriculture Improvement Act of 2018" effective on August 21, 2020 (85 Fed. Reg. 51,639) made a product containing contains more than .3 D9 THC illegal.

8. As used in this Complaint, an illegal D8 vape means a vape that contains more than .3 D9 hemp derived THC or synthetic THC.

9. Each Defendant advertises, "To be considered hemp oil, by law a product cannot contain more than 0.3% THC. If it contains more it is considered marijuana and may not be legal in your state."

10. Studies suggest that CBD is not very reliable or safe. In 2020, the FDA did a study on products that claimed to have a specific amount of CBD and those claimed amounts were compared to the FDA testing results.

11. Of the 102 products that indicated a specific amount of CBD, 18 products (18%) contained less than 80% of the amount of CBD indicated, 46 products (45%) contained CBD within 20 percent of the amount indicated, and 38 products (37%) contained more than 120 percent of the amount of CBD indicated. Of great concern is that 49% of the products tested contained THC.

12. The Journal of the American Medical Association published a letter demonstrating the results of "undercover" purchases of CBD. Of 84 samples tested, THC was detected in 21%. There were other defects in the mislabeled products. Only 30.95% were accurately labeled. Accuracy of labeling depended on product type, with vaporization liquid most frequently mislabeled (87.50%) and oil most frequently labeled accurately (45.0 %). THC was detected (up

to 6.43 mg/mL) in 18 of the 84 samples tested (21.43%). But Defendants appear to certify and sell products that contain 1000% of the allowed limit of D9 THC or synthetically derived Delta 9 THC.

13. A Johns Hopkins researcher tested CBD products. Testing showed 44 products (59%) had detectible levels of CBD, but the average ratio of THC to CBD was 36-to-1. Only one product had a 1-to-1 ratio, which some research suggests is associated with fewer side effects and improved clinical benefit compared with higher ratios of THC to CBD. The testing indicated the edible cannabis products may have very little CBD.

14. A study published by the National Institute of Health showed that products were mislabeled with 26% containing less CBD than labeled and 43% containing more, indicating a high degree of variability and poor standardization of online products. Notably, the oil-based products were more likely to be accurate (45% compared to 25% for tincture and 12.5% for vaporization liquid) and had a smaller percentage of deviation. Oil based products also had a higher range of concentration. In addition to CBD mislabeling, THC was detected in 21% of samples. This study also notes that products containing THC could have sufficient enough concentrations to produce intoxication in children.

15. On the issue of D9 THC, federal law is clear: it is a felony under the Controlled Substances Act of 1970 ("CSA") to sell a cannabis product that contains more than .3% D9 by weight.

16. The DEA has also now characterized D8 as a controlled substance as well.

17. Of course, in recent years the United States Department of Justice has largely declined to bring prosecutions under the federal cannabis laws, prompting hundreds of millions of investment dollars and thousands of new customers to flow into the D8 commercial hemp industry.

18. But the Justice Department's current policy of non-enforcement does not strike a single word from the U.S. Code or deprive private individuals of their judicially- enforceable rights

3

under federal law. The Department of Justice can no more amend a federal statute than can the State of Arkansas, and cannabis remains just as illegal under federal law today as it was when Congress passed the Controlled Substances Act in 1970 (CSA herein).

19. Persons like the Defendants who market their products as medicinal should be held to reasonable production standards to ensure this "medicine" is legal. Each Plaintiff is filing this suit to vindicate federal rights under the Magnusson Moss Act and state law.

20. Dealing in cannabis than contains more than .3% D9 THC by weight is illegal activity under state and federal law or that contains synthetic D9 THC, and those who engage in a pattern of illegal activity should disgorge the profit and all monies received from the illegal transaction.

21. The sale of the Product with more than .3% D9 THC by weight is illegal. Plaintiffs purchased D8 vape pen products who contained more than .3% D9 THC by weight. Defendants falsely expressly or impliedly warranted these products contained less than .3% D9 THC by weight.

22. Reasonable consumers like Plaintiff and the Class must and do rely on a company to honestly identify and describe the components, attributes, and features of the Product, relative to itself and other comparable products or alternatives.

23. The value of the Product that plaintiff purchased was materially less than its value as represented by defendant because it was illegal.

24. Plaintiffs bought the Product because the Product was represented as legal. Defendant sold Products and at higher prices than it would have in the absence of this misconduct, resulting in additional and illegal profits at the expense of consumers.

25. Had Plaintiff and proposed class members known the truth, they would not have bought the Products because it is illegal to buy these products.

26. Each Product is sold for a price premium compared to other similar products, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

## JURISDICTION AND VENUE

27. Jurisdiction is proper, and so is venue, since the Defendants were residents of this County.

28. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

29. Defendant **KUNAL MANMEET, LLC, d/b/a VAPOR PLANET** is an Arkansas company with a principal place of business in Pulaski County Arkansas, whose CEO is **PARWINDER SINGH.**

30. Plaintiff, **DIANE NGUYEN,** is a citizen of Arkansas who purchased Products in Faulkner County, Arkansas.

31. Venue is proper in this County because Defendant resided in this County.

32. Plaintiff is a person who purchased D8 vape pens from the Defendant, who seeks to represent the Class defined below.

33. Defendant is one of the largest vape pen sellers in the County.

34. The Products are sold at Defendants' retail locations.

35. The Product is sold individually.

36. Plaintiff bought the Product on one, or more, occasions within the statute of limitations for each cause of action alleged, since February 1, 2021.

37. Plaintiff bought the Product because each expected it would be legal.

38. Plaintiffs wanted to buy a legal D8 product, but did not.

39. Plaintiff wanted a legal amount of D9, which was not received.

40. Plaintiff did not expect that the "D8" would consist of more than .3% D9 by dry

weight, rendering the Product illegal under federal law.

41. Plaintiff bought the Product at, or exceeding, the retail price.

42. Plaintiff relied on the representations identified here.

43. Plaintiff would not have purchased the Product if she knew the representations were false and misleading.

44. Plaintiff chose between Defendant's Product and other similar products which were represented similarly but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

45. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

46. Plaintiff intends to, seeks to, and will, purchase the Product again when each can do so with the assurance that Product's representations are legal.

## CLASS ALLEGATIONS

47. Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following classes:

> National Class: All persons who bought the Products in this County who purchased the Products during the statutes of limitations for each cause of action alleged.
>
> Common questions of law or fact predominate and include whether Defendant's representations were and are misleading and if each Plaintiff and class members are entitled to damages.
>
> Plaintiffs' claims, and basis for relief, are typical to other members because all were subjected to the same unfair and deceptive representations and actions.
>
> Plaintiff is an adequate representative because her interests do not conflict with other members.
>
> No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

48. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

49. Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

50. Plaintiff seeks class-wide injunctive relief because the practices continue.

51. Plaintiffs bring their claims for the following class: all persons who and within the applicable statute of limitations period, purchased one or more Products from the Defendants.

52. The following people are excluded from the Class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or its parents have a controlling interest and their current employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

53. The proposed class contains hundreds of members so numerous that separate joinder of each member of the class is impractical. There are millions of class members. Class members can be identified through public notice.

54. There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation: (1) whether Defendants made false or misleading statements of fact in its advertising and labeling; (2) whether Defendants violated Arkansas' consumer protection statutes; (3) whether Defendants committed a breach of contract; (4) whether Defendants committed a breach of an express warranty; (5) damages needed to reasonably compensate Plaintiff and the proposed class.

55. Plaintiffs' claims are typical of the proposed class. Like the proposed class, Plaintiff purchased the Products and relied on the D9 THC content listed on the labels. There are no conflicts of interest between Plaintiffs and the class.

7

56. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## COUNT I BREACHES OF EXPRESS WARRANTY, IMPLIED WARRANTY OF MERCHANTABILITY AND MAGNUSON MOSS WARRANTY ACT, 15 U.S.C. §§ 2301, ET SEQ.

57. The Product was manufactured, labeled, and sold by defendant and expressly and impliedly warranted to plaintiff and class that the Product was a legal product that contained D8, understood as being comprised of a non-de minimis legal amount of D9, instead of an illegal amount.

58. The Magnuson-Moss Warranty Act provides a cause of action to any consumer "who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation [under the Act], or under a written warranty, implied warranty, or service contract." 15 U.S.C.§ 2310(d)(1). The Act defines a "written warranty" as:

> Any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time.

59. 15 U.S.C. § 2301(6)(A). A manufacturer's statement is a written warranty under the Act if (1) the statement relates to the nature of the material or workmanship, and (2) affirms or promises defect free performance or guarantees a specified level of performance over a specified period of time. *Id.*

60. Plaintiffs read, or relied upon, specific marketing statements that the product was legal before purchasing the Product on the box and the website, so Defendant made these representations before their purchase. Defendant sells D8 Vape pens in this District (The Product) warranted as compliant with the Hemp Farming Act of 2018, meaning that these products contain

8

no more than .3% D9 THC by weight. This representation is false. Defendant also warrants and represents through its website:

61. A Certificate of Analysis, or "COA", is a document from an accredited laboratory that shows the number of various cannabinoids in a product.

62. Our company sends every batch of every product made to a third (3rd) party laboratory for testing to protect our customers. Our COA's also certify that our products have as much CBD and other cannabinoids as we advertise.

63. Once you receive your product there should be a QR code on the label that you can scan and you will be taken to a web page with the product's COA.

64. But the Product contained more than .3% D9 by weight.

65. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

66. This duty is based on Defendant's retailer role in the market for this type of Product.

67. Plaintiffs provided notice to Defendant, its agents, representatives, retailers, and their employees.

68. Defendant received notice and should have been aware of these issues due to complaints by regulators, lawyers, and consumers, to its main offices.

69. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

70. Plaintiff and class members would not have purchased the Product, or paid as much for the Product, if the true facts had been known, suffering damages.

## COUNT II ADPTA

71. Defendant had a duty to truthfully represent the Product under the Arkansas Deceptive Trade Practices Act, which it breached.

72. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area.

73. The representations took advantage of disabled consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a recognized and trusted brand in Texas.

74. Plaintiff, and Class Members, reasonably and justifiably relied on these intentional misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

75. Plaintiffs, and Class Members, would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## COUNT III FRAUD

76. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it was a legal product that contained D8, understood as being comprised of a de minimis legal amount of D9, instead of an illegal amount.

77. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## COUNT IV UNJUST ENRICHMENT/DISGORGEMENT

78. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of illegally obtained profits. If the new contract be fair and lawful, and the new consideration be valid and adequate, it will be enforced. If, however, it be unfair or fraudulent, or the new consideration so inadequate as to import fraud, imposition, or undue influence, it will be rescinded, and justice done to the parties. Dent v. Ferguson, 132 U.S. 50, 67, 10 S. Ct. 13, 19, 33 L. Ed. 242 (1889).

## JURY DEMAND

79. Plaintiff demands a jury trial on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, pray for judgment:

a. Declaring this a proper class action, certifying Plaintiffs as representative of the Class, and the undersigned as counsel for the Class;

b. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

c. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the Class pursuant to the applicable laws;

d. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

e. Awarding costs and expenses, including reasonable attorneys' fees for Plaintiffs' attorneys and experts; and,

f. Other and further relief as the Court deems just and proper.

Respectfully submitted,

SUTTER & GILLHAM, P.L.L.C.
Attorneys at Law
1501 N. Pierce Street, Ste. 105
Little Rock, AR 72207
501/315-1910  Office
501/315-1916  Facsimile
Counsel for the Plaintiffs/Class

By: /s/Luther Oneal Sutter
Luther Oneal Sutter, ARBN 95031
luthersutter.law@gmail.com

By: /s/ Lucien R. Gillham
Lucien R. Gillham, ARBN 99199
lucien.gillham@gmail.com