ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2024-Apr-05  23:21:35
60CV-23-1690
C06D06 : 28 Pages

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

DIANE NGUYEN, on behalf
of herself and all others similarly
situated.                                                    PLAINTIFF

v. <u>60CV-23-1690</u>

CHRISTOPHER G. WHEELER,
SAVAGE ENTERPRISES,
PUR ISO LABS, LLC
KUNAL MANMEET, LLC, d/b/a VAPOR PLANET,
Marin Analytics LLC
and JOHN DOES 1-10.                                DEFENDANTS

## SECOND AMENDED CLASS ACTION COMPLAINT

Comes Plaintiff, through counsel, and for this Complaint states:

### I. INTRODUCTION

1.    D9 THC is the psychoactive component of the cannabis commonly referred to as Marijuana. D8 THC is also psychoactive, but D8 THC is hemp derived and is not a controlled substance under federal law.  If D8 THC is produced, D9 THC is also produced[1]. Plaintiff files this suit to vindicate the federal laws prohibiting the cultivation and sale of D9 cannabis and their rights under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Arkansas Deceptive Trade Practices Act and Drug dealer liability Act, and the Magnuson-Moss Act. Plaintiff seeks redress under RICO, which requires those who engage in racketeering activity—including the commercial production of illegal D9 products—to pay those they injure treble damages, costs, and attorneys' fees. Plaintiff also seeks an injunction under Arkansas State law directing the cannabis operations defrauding Plaintiff

---

[1] Any amount of synthetic D9 THC in a product is illegal.  Hemp derived D9 THC can be present in a product so long as the amount does not exceed .3% D9 THC by weight.

and the Class to stop violating the federal drug laws. The Original Complaint is incorporated by reference herein.

2.      It is a bedrock principle of the United States Constitution that federal law is the supreme law of the land. State laws that are flatly inconsistent with constitutionally authorized federal law have no force or effect. The Hemp Farming Act of 2018 removed hemp (defined as cannabis with less than 0.3% THC) from Schedule I controlled substances and making it an ordinary agricultural commodity. Its provisions were incorporated in the 2018 United States farm bill that became law on December 20, 2018.

3.      Then, the interim final rule entitled "Implementation of the Agriculture Improvement Act of 2018" effective on August 21, 2020 (85 Fed. Reg. 51,639) made a product containing more than .3 D9 THC illegal.  Ug dealer

4.      As used in this Complaint an illegal D8 vape means a vape that contains more than .3 D9 hemp derived THC or synthetic THC.

5.      Studies suggest that CBD is not very reliable or safe. In 2020, the FDA did a study on products that claimed to have a specific amount of CBD and those claimed amounts were compared to the FDA testing results. Of the 102 products that indicated a specific amount of CBD, 18 products (18%) contained less than 80% of the amount of CBD indicated, 46 products (45%) contained CBD within 20 percent of the amount indicated, and 38 products (37%) contained more than 120 percent of the amount of CBD indicated. Of great concern is that 49% of the products tested contained THC.

6.      The *Journal of the American Medical Association* published a letter demonstrating the results of "undercover" purchases of CBD. Of 84 samples tested, THC was detected in 21%. There were other defects in the mislabeled products. Only 30.95% were accurately labeled. Accuracy of labeling depended on product type, with vaporization

liquid most frequently mislabeled (87.50%) and oil most frequently labeled accurately (45.0 %). THC was detected (up to 6.43 mg/mL) in 18 of the 84 samples tested (21.43%).  But Defendants appear to certify and sell products that contain 1000% of the allowed limit of D9 THC or synthetically derived Delta 9 THC.

7.     A Johns Hopkins researcher tested CBD products. Testing showed 44 products (59%) had detectible levels of CBD, but the average ratio of THC to CBD was 36-to-1. Only one product had a 1-to-1 ratio, which some research suggests is associated with fewer side effects and improved clinical benefit compared with higher ratios of THC to CBD. The testing indicated the edible cannabis products may have very little CBD.

8.     A study published by the National Institute of Health showed that products were mislabeled with 26% containing less CBD than labeled and 43% containing more, indicating a high degree of variability and poor standardization of online products. Notably, the oil-based products were more likely to be accurate (45% compared to 25% for tincture and 12.5% for vaporization liquid) and had a smaller percentage of deviation. Oil based products also had a higher range of concentration. In addition to CBD mislabeling, THC was detected in 21% of samples. This study also notes that products containing THC could have sufficient enough concentrations to produce intoxication in children.

9.     On the issue of D9 THC, federal law is clear: it is a felony under the Controlled Substances Act of 1970 ("CSA") to sell a cannabis product that contains more than .3% D9 by weight.

10.     Of course, in recent years the United States Department of Justice has largely declined to bring prosecutions under the federal cannabis laws, prompting hundreds of millions of investment dollars and thousands of new customers to flow into the D8 commercial hemp industry. But the Justice Department's current policy of non-enforcement

does not strike a single word from the U.S. Code or deprive private individuals of their judicially- enforceable rights under federal law. The Department of Justice can no more amend a federal statute than can the State of Arkansas, and cannabis remains just as illegal under federal law today as it was when Congress passed the Controlled Substances Act in 1970 (CSA herein).

11. Persons like the Defendants who market their products as medicine should be held to reasonable production standards to ensure this "medicine" is effective. Plaintiff is filing this suit to vindicate his federal rights under RICO, 18 U.S.C. §§ 1961 et seq., the CSA, 21 U.S.C. §§ 801 et seq., and the Supremacy Clause.

12. Dealing in cannabis that contains more than .3% D9 THC by weight is racketeering activity under RICO or that contains synthetic D9 THC and those who engage in a pattern of racketeering activity through a corporation or other enterprise are liable for three times the economic harm they cause plus costs and attorneys' fees. Those who conspire with racketeers by agreeing to assist them are likewise liable. RICO also gives federal courts the power to order racketeering enterprises and their coconspirators to cease their unlawful operations. Accordingly, the Plaintiff and the Class ask this Court to award them the damages, costs, and fees to which they are entitled, and both Plaintiffs request that the Court order the RICO Defendants to cease their open and notorious violation of federal law.

## II. JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over Plaintiffs' RICO and Magnuson-Moss claims, as well as personal jurisdiction over the Defendants.

14. Venue is proper in this Court because one or more Defendants reside in Pulaski County, Arkansas. Venue over Plaintiffs' RICO claims is also proper under 18

U.S.C. § 1965(a) because the RICO defendants either reside in Arkansas or transact business in Arkansas.

## III. PARTIES

15.     Plaintiff is a resident and citizen of Arkansas who has purchased and ingested the products described in the Original Complaint.

16.     Plaintiff Diane Nguyen is a resident of the State of Arkansas who has purchased product that was fraudulently certified by the Lab, Marin Analytics. Ms. Nguyen bought product tested by The Lab and relied upon the Lab's certification to her detriment. She seeks to represent a Class defined as any person who has purchased a vape manufactured by one or more Defendants in the 4 years preceding the filing of this lawsuit.

17.     The Class is defined as any and all persons who has purchased a D8 vape manufactured, sold, or distributed by the Defendants in the four years preceding the filing of this lawsuit.

18.     Rule 23 of the Arkansas Rules of Civil Procedure sets forth the prerequisites for a class action: (1) a proposed class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) there must be a question of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ("typicality"); and (4) the representative parties must fairly and adequately protect the interests of the class ("adequacy"). *See* ARK.R.CIV.P. 23(a). Each of these requirements have been met.

19.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are believed to be in the millions of dollars, the individual

damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class Members prosecuting their own separate claims is remote and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by the individual litigation of such cases. Further, the prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.

20.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

21.     Defendants have facilitated the sale of illegal hemp products to thousands of people over the course of the last 4 years.  Therefore, the members of the Class are believed to be so numerous that joinder of all members is impracticable. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. The Class is also objectively defined and presently ascertainable by reference to records in the possession of Defendant or third parties, and their identification is a matter of ministerial determination from, inter alia, Defendant's receipts and/or sales logs. Thus, the Class has sufficient numerosity to be certified.

22.     Each Class Member has the same interest in buying accurately labeled hemp products such that Plaintiff's claims, as well as the applicable defenses, are typical of the Class, and there are common questions of law. There are numerous questions of law and fact common to the Class that predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are: (a) Whether any of the Vapes contain any amount of D9; (b) Whether any of the Vapes contain

an illegal amount of D9; (c) Whether any of Defendant's products contain any amount of synthetically derived D9; (d) Whether Defendant falsely advertised or certified any product as being free from D9; (e) Whether and to what extent consumers purchased products from Defendant that contain illegal amounts of D9; (f) Whether Defendant's conduct was knowing and willful; and (g) Whether Defendant is liable for damages and the amount of such damages.

23.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

24.     A Class action is superior to all other forms of action because of the nature of the requested relief. Also, Plaintiffs and the Class seek a permanent injunction requiring the Defendants to comply with federal law and disgorge the monies they have received. So, Plaintiff seeks certification under Rule 23(b)(1) and (2).

25.     Defendant Savage Enterprises is a corporation that has its principal place of business in California or Minnesota, where it operates a facility that produces the D* vape pens at issue. Christopher Wheeler is the CEO of Savage Enterprises who has directed the development of this criminal enterprise and who has falsely stated Savage's products are legal, but he knows they are not..

26.     Defendant Marin Analytics LLC (the Lab hereinafter) is a California limited liability company that has its principal place of business in California, where it tests products for Savage and others.

27.     Since 2016, Pur IsoLabs states it has been proudly crafting and curating the finest collection of quality hemp products to support a balanced lifestyle. It provided the illegal distillate to Savage. It states its passion for wellness, combined with an extensive understanding of the science behind the hemp plant, has resulted in our custom, proprietary

formulations of exceptionally effective products. With top quality, yet limited ingredients Pur Iso Labs warrants its products are designed toward purity and potency, delivering an unsurpassed CBD experience to customers. It falsely states, "From rigorous standards in selecting only the finest USA grown hemp to reliable 3rd party testing of raw materials and finished products, Pur Iso Labs has positioned itself as a trusted source in the hemp CBD industry. As the first CBD company in Texas, and with the opening of our manufacturing and formulation lab, Texas Pur, claims it is committed to helping people by providing reliability, transparency, and an unrivaled quality product."

28.    Defendants John Doe 1-10 are vendors, distributors, law firms and banks who have assisted the Named Defendants in operating the criminal enterprise alleged herein and will continue to do so in the absence of injunctive relief.

29.    The Named Defendants and John Doe Defendants are hereinafter referred to as the "RICO Defendants."

### IV. FACTUAL ALLEGATIONS

### Federal Law Prohibits the
### Production and Distribution of D9 Marijuana

30.    Congress passed the CSA in 1970 as Title II of the Comprehensive Drug Abuse Prevention and Control Act. 84 Stat. 1236. Among the purposes of the CSA was to reduce drug abuse and the illegitimate traffic in controlled substances in the United States by prohibiting the unauthorized production, distribution, or possession of controlled substances.

31.    Based in Irvine, California, Savage Enterprises was founded in 2014 by co-owners Christopher G. Wheeler and Matt Winters with the vision of bringing innovation to the counter-culture space. Savage alleges it has been committed to improving the

community it serves by providing superior, consumer-centered and cost-effective products that are third-party lab tested with quality assurance, consistency, and traceability. Savage says its goal is to create the benchmark for quality and assurance in the industry. Under its Delta Extrax brand (www.DeltaExtrax.com), Savage Enterprises sells delta-10-THC cartridges, disposables and tinctures, delta-8-THC-infused shots, vape cartridges, concentrates, disposables, edibles, delta-8-THC-infused hemp flower, pods, tinctures, THC-O, HHC, THC-V and THC-P products over the internet for delivery in Arkansas and across the nation.  Each Defendant has done business in the state of Arkansas and hundreds of thousands of dollars of product has been sold.

32.    Defendant Savage Enterprises manufactured some of the products Plaintiff purchased from VaporWorld in Conway, Arkansas, after buying the product from a Distributor, who is named as John Doe 1.

33.    Acting at Savage's direction, the Lab produced a false certificate.

34.    Each Certificate falsely represents that there is no D9 THC in the product.

35.    Delta-8 is a cannabis compound that has become popular because of its similarity to Delta-9 THC, the main compound in cannabis that gets one high, causing euphoria, happiness, and sedation.

36.    Delta-8 is short for its scientific name, delta-8-tetrahydrocannabinol, or simply just delta-8 THC. Some people just call it "D-8." Delta-8 THC can cause effects similar to regular delta-9 THC, but they will be much less potent in the same amount.

37.    Delta 8 THC is a natural cannabis compound that occurs in both marijuana and hemp. However, its presence is usually so little that one needs a massive amount of plant material to procure any significant quantity of this compound. This is the reason why some manufacturers like Savage choose to procure it via synthesis of CBD, instead of

extracting it directly from hemp.

38.     Delta-8, like delta-9 (regular THC), binds to the body's endocannabinoid system, which causes one to feel high. Chemically speaking, delta-8 and delta-9 are similar in that they both have a double bond in their structures. The double bond is thought to produce the intoxicating effects that make you feel high. D8 and D9 THCs are chemically different in the placement of the double bond. Both cannabinoids have a chain of carbon atoms, but delta-8 has the double bond on the eighth carbon, whereas delta-9 has it on the ninth.

39.     Delta-8 binds to the endocannabinoid system in a slightly different manner because of the location of its double bond. This reason makes delta-8 much less potent than regular THC. So, in order to obtain D8 THC in sufficient concentrations to vape and achieve a "high," D9 THC is created in illegal amounts.

40.     Had Plaintiff known that there was D9 in illegal amounts in the product, she would not have ingested the product, but she did.

41.     The products Plaintiff purchased contained synthetic D9 THC or more than .3% hemp derived D9 THC by weight.  Thus, the products Plaintiff purchased were controlled substances under the CSA.

42.     When it passed the CSA, Congress found that "[t]he illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people," 21

U.S.C. § 801(2), and that "[a] major portion of the traffic in controlled substances flows through interstate and foreign commerce," *id.* § 801(3). The CSA seeks to address the social and economic ills caused by drug abuse and drug trafficking by prohibiting the

illicit drug trade.

43.     The CSA categorizes drugs according to a series of schedules, with the most dangerous drugs falling under Schedule I. *See id.* § 812(b). Schedule I drugs have "a high potential for abuse." *Id.* § 812(b)(1). In enacting the CSA, Congress has classified D9 products containing more than .3 % D9 cannabis by weight as a Schedule I drug. *Id.* § 812(c). Congress thus deemed cannabis to have a high potential for abuse. *Id.* § 812(b)(1). By classifying cannabis as a Schedule I drug, as opposed to listing it on a lesser schedule, Congress has made the manufacture, distribution, or possession of products containing more than .3% D9 cannabis by weight a criminal offense, with the sole exception being use of the drug as part of a Food and Drug Administration preapproved research study. *Id.* §§ 823(f), 841(a)(1), 844(a).

44.     The large-scale manufacture and distribution of synthetic D9 THC is a serious felony under the CSA, as is the sale and distribution of products containing more than .3% hemp-derived D9 THC. A first-time offender convicted of producing or distributing 1,000 or more cannabis plants is subject to a sentence of 10 years to life imprisonment. *Id.* § 841(b)(1)(A). Growing 100 or more cannabis plants that contain more than .3 D9 THC by weight subjects the first-time offender to a sentence of 5 to 40 years imprisonment. *Id.* § 841(b)(1)(B). The cultivation and sale of smaller amounts of cannabis is punishable by maximum sentences that can be as long as 20 years. *See id.* § 841(b)(1)(C), (D). The CSA also criminalizes the possession of synthetic D9 THC and hemp derived D9 THC, unless it contains less than .3 D9 THC by weight. Unless otherwise authorized by federal law, possession of cannabis by a first-time offender is punishable by up to 1 year of imprisonment. *Id.* § 844(a).

45.     In addition to its prohibitions on cultivation, sale, and possession of  hemp

derived THC, unless it contains less than .3 D9 THC by weight, the CSA also forbids a wide range of other activities connected with the operations of a cannabis business. Thus, it is a crime to possess "any equipment, chemical, product, or material" with the intention of using it to manufacture marijuana, *id.* § 843(a)(6), or to distribute any such material with the knowledge that it will be used to manufacture marijuana, *id.* § 843(a)(7). The CSA bars the use a telephone, email, mail, or any other "communication facility" in furtherance of the manufacture or sale of marijuana, *id.* § 843(b), and it is a federal crime to use the Internet to advertise the sale of marijuana, *id.* § 843(c)(2)(A). Reinvesting the proceeds from cannabis operations is also a crime, *id.* § 854(a), as is knowingly facilitating a financial transaction involving funds derived from manufacturing and selling marijuana, 18 U.S.C. §§ 1956, 1957, 1960. It is also a crime to knowingly lease, rent, maintain, manage, or control a place where cannabis is manufactured or sold. 21 U.S.C. § 856. Leading a group of five or more people who commit a continuing series of federal cannabis crimes like Defendants have done here is an especially serious offense. *Id.* § 848. And attempting or conspiring to commit most of those crimes is also a criminal offense. *See id.* § 846; 18 U.S.C. §§ 1956(a)(1), 1956(h), 1957(a).  Each Defendant has knowingly leased, rented, maintained, managed, or controlled a place where D8 vape is manufactured or sold

46.     These criminal prohibitions on virtually every aspect of the D9 THC business make the federal policy embodied in the CSA unmistakably clear: D9 THC is a dangerous drug that is banned throughout the United States. And because RICO defines most violations of the CSA as "racketeering activity," *see* 18 U.S.C. § 1961(1)(D), any business engaged in the commercial cultivation and sale and certification of hemp products that contain more than .3% D9 THC by weight is a criminal enterprise for purposes of federal law. Those like Defendants who conduct or conspire to assist such enterprises are subject

to the severe criminal sanctions and civil liability that RICO imposes. *See id.* § 1962(c), (d).

### The RICO Defendants Operate Racketeering
### Enterprises that Cultivate and Distribute D8 Vapes

47.     Nguyen purchased D8 vape certified by The Lab as having D9 hemp derived THC that contains less than .3 D9 THC by weight manufactured by Savage and Wheeler using distillate manufactured by Purlso Labs.

48.     Actually, Plaintiff purchased a D8 vape for more than $25.00, that contains more than .3 D9 THC by weight that may not be derived from hemp.

49.     So, Nguyen bought a D8 vape, then had the D8 vape tested.   The tests revealed that Defendants routinely sell, certify, and manufacture products that contain contains more than .3% D9 THC by weight and that has been falsely labeled to the Plaintiff and the Class members.

50.     So, Defendants, in conspiracy with the cultivators and John Doe Defendants have misrepresented the amount of D9 THC in the cannabis Plaintiff brought and may have misrepresented the amount of synthetic D9 THC in the product.  In the COA referenced on the package, Savage and Vapor World certify that D9 THC was not detected in the product. This is false.

51.     To facilitate this fraud, Defendants publish the false test results over the internet hundreds of times and such activity amounts to wire fraud.

52.     Defendants intended that Plaintiff and the Class rely on these test results, and Plaintiff and the Class reasonably relied on these test results to their detriment.

53.     Leasing or maintaining property for the production of synthetic D9 THC or D9 hemp derived THC, unless it contains less than .3 D9 THC by weight, is a crime under 21 U.S.C. § 856 and is racketeering activity under 18 U.S.C. § 1961(1)(D).

54.     Defendants, together with their respective law firms and bankers, also conspired and agreed to work together so that the Defendants could sell, certify, or manufacture products that contain synthetic D9 or that contains more than .3 D9 THC by weight and to contribute to the ongoing violations of the CSA inherent in those operations. Entering into such an agreement is conspiracy under 21 U.S.C.§ 846 and is racketeering activity under 18 U.S.C. § 1961(1)(D).

55.     Defendants repeatedly used the telephone, email, or other communication facilities to take steps in furtherance of their efforts to unlawfully sell D9 THC that had been mislabeled. Such uses of communication facilities violate 21 U.S.C. § 843(b) and are racketeering activity under 18 U.S.C. § 1961(1)(D).

56.     One or more Defendants advertised D9 hemp derived THC, that contains synthetic D9 THC or more than .3 D9 THC by weight for sale and their services over the Internet in violation of 21 U.S.C. § 843(c)(2)(A), and this is racketeering activity under 18 U.S.C. § 1961(1)(D).

57.     The RICO Defendants together formed an association-in-fact enterprise for the purpose of manufacturing D9 THC products and selling it to vendors in Arkansas and across the nation. To that end, they pooled their resources, knowledge, skills, and labor to achieve through the enterprise efficiencies in the cultivation and distribution of D9 hemp derived THC containing more than .3 D9 THC by weight that none of them could have achieved individually.

58.     All of the RICO defendants have contractual and other relationships with each other and are collaborating together to contribute to the association-in-fact enterprise's efforts to produce D9 hemp derived THC, that contains more than .3 D9 THC by weight and

thereby engages in an ongoing pattern of racketeering activity.

59.     All of the RICO defendants agreed to participate in and assist the enterprise with full knowledge of its overall aim of growing and selling illegal D8 vapes. As set forth above, that goal could only be accomplished through numerous violations of the CSA. Each such violation of the CSA is racketeering activity, and all of the RICO defendants thus knew and intended that in agreeing to assist the enterprise they would help it carry out a pattern of racketeering activity.

60.     18 U.S.C §1956 prohibits the financial transactions that involve the proceeds of an unlawful activity for the intent to promote that unlawful activity. Each Defendant has initiated and received financial transactions to facilitate the sale of products that violate the Controlled Substances Act of 1971.

## CLAIMS FOR RELIEF RICO COUNTS
## COUNT I VIOLATION OF 18 U.S.C. § 1962(C)

61.     Plaintiff incorporates by reference the allegations of the preceding paragraphs.

62.     RICO creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). Under 18 U.S.C.

§ 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Defendants violated this provision of 18 U.S.C. § 1962.

63.     All of the RICO Defendants formed an association-in-fact enterprise within

the meaning of 18 U.S.C. § 1961(4) by establishing contractual and other relationships with each other, collaborating to manufacture D8 vapes to sell that product. This enterprise enables the RICO Defendants to more efficiently achieve their collective purpose of distributing D8 vapes that contain an illegal amount of D9.

64.     Funding, goods, and services procured by the enterprise have moved in interstate commerce and the enterprise plans to sell cannabis in interstate commerce.

65.     Defendants have each conducted or participated in the conduct of the affairs of the enterprise through a pattern of racketeering activity. Because the D8 vapes contain an illegal amount of D9 vapes, Defendants collectively entered into an agreement that will be used to commit numerous crimes under the CSA, and that agreement violates 21 U.S.C. § 856.

66.     Defendants also conspired, in violation of 21 U.S.C. § 846, to work together with the rest of the enterprise for the success of Savage's open-ended illegal D8 vape business. On information and belief, they used communication facilities to sell the D8 vape and further their drug conspiracy in violation of 21 U.S.C. § 843(b). Defendants already possess materials, goods, and facilities for the manufacture of illegal D8 vapes in violation of 21 U.S.C. § 843(a)(6). All of those crimes are racketeering activity under 18 U.S.C. § 1961(1)(D).

67.     The racketeering activities of Defendants directly and proximately injured the Plaintiff and the Class' property by selling them products that contained more than .3 percent D9 THC but advertised "legal" hemp derived D9 THC vape containing less than .3% Delta 9 THC.

**COUNT II**
**Violation of 18 U.S.C. § 1962(d) Against All RICO Defendants**

68.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

69.     RICO creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). Under 18 U.S.C.  Each Defendant has been provided notice that the D8 vape pens contained a controlled substance but they have continued to sell these products.

§ 1962(d), it is "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

70.     The RICO Defendants, for their mutual and individual profit, agreed and conspired to violate 18 U.S.C. § 1962(c) by forming an association-in-fact enterprise for the purpose of manufacturing D8 vapes that they knew or should have known contain illegal amounts of D9 THC are sold and selling them throughout the nation.

71.     The RICO Defendants know that this is patently unlawful under the CSA. This scheme or artifice to defraud and commit violations of federal law could only be accomplished through a pattern of racketeering activity, for maintaining a premises at which products that contain illegal amounts of D9 THC are sold, cultivating and selling D9 THC, and possessing the goods and materials needed to manufacture illegal D8 vapes are all crimes under the CSA. *See, e.g.*, 21 U.S.C. §§ 841(a), 843(a)(6), 856.

72.     Funding, goods, and services procured by Defendants in furtherance of their association-in-fact enterprise for the purpose of cultivating and selling D8 vapes have moved in interstate commerce, and the enterprise plans to sell products derived from the cannabis in interstate commerce.

73.     The RICO Defendants have engaged in racketeering activity in furtherance of their conspiracy to violate 18 U.S.C. § 1962(c). All of the RICO Defendants violated 21

U.S.C. § 846 by agreeing and conspiring to assist in the distribution and sale of the D8 product. Defendants and their agents entered into an agreement to operate a medical cannabis cultivation in violation of 21 U.S.C. § 856.

74.    Racketeering activities undertaken in furtherance of the RICO Defendants' conspiracy to violate 18 U.S.C. § 1962(c) have injured the Plaintiff and the Class' property.

75.    The racketeering activities of Defendants directly and proximately injured the Plaintiff and the Class' property by selling them a product that contained more than .3% D9 THC by weight.  Defendants has mispresented D9 THC values for commercial gain and to mislead Plaintiff and the Class, who could not know what was truly in the product.

76.    Had Plaintiff or the Class known the product contained more than .3% D9 THC by weight, she would not have purchased the product, so she seeks disgorgement and restitution for herself and the Class.

## COUNT III
## Violation of 18 U.S.C. § 1962(c)

52.    Plaintiffs incorporate the foregoing as if fully set out herein.

53.    RICO creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). Under 18 U.S.C.

§ 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

54.    An "enterprise" for purposes of RICO "includes any . . . partnership,

corporation, association, or other legal entity." 18 U.S.C. § 1961(4). Defendants are each a limited liability company or corporation. Thus, there is a RICO "enterprise."

55.    Funding, goods, and services procured by Defendants' unlawful activities have moved in interstate commerce, and Defendants sell D8 vape in the interstate market.

56.    The racketeering activities of Defendants directly and proximately injured the Plaintiff and the Class' property by selling them "legal" D8 vapes that was actually illegal.

## COUNT IV
## Violation of 18 U.S.C. § 1962(d)

57.    Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

58.    RICO creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). Under 18 U.S.C.

§ 1962(d), it is "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Defendants agreed and conspired to violate 18 U.S.C. § 1962(c).

59.    An "enterprise" for purposes of RICO "includes any . . . partnership, corporation, association, or other legal entity." 18 U.S.C. § 1961(4). Defendants are a limited liability company or a corporation. It is a RICO "enterprise."

60.    Funding, goods, and services procured by Defendants in furtherance of Defendants' unlawful activities have moved in interstate commerce, and each Defendant sells cannabis in the interstate market.

61.    Defendants understood that their collective efforts to establish and operate

the illegal cannabis operations across the nation could only be accomplished through a pattern of racketeering activity. Specifically, all understood and agreed that Defendants would violate the CSA by cultivating hemp and selling it, 21 U.S.C. § 841(a), possessing the equipment and materials necessary for hemp cultivation, *id.* § 843(a)(6), and maintaining the premises for cultivating and selling hemp products that contained more than .3% D9 THC by weight, *id.* §§ 849, 856. Each of those crimes is racketeering activity, and together they form an ongoing pattern.

62.     Racketeering activities undertaken in furtherance of the conspiracy among Defendants to violate 18 U.S.C. § 1962(c) have injured the Plaintiff and the Class' property. Specifically, the concealment of synthetic D9 THC or understatement of D9 THC directly and proximately injured the Plaintiff and the Class' property by inducing them into an illegal contract, defrauding them and interfering with their use and enjoyment of their property.

## COUNT V
## Violation of 18 U.S.C. § 1962(c)

63.     Plaintiff incorporates by reference the allegations of the preceding paragraphs.

64.     RICO creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). Under 18 U.S.C.

§ 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

65.     An "enterprise" for purposes of RICO "includes any . . . partnership, corporation, association, or other legal entity." 18 U.S.C. § 1961(4). Defendants are a limited liability company or a corporation. It is a RICO "enterprise."

66.     Each Defendant has conducted or participated in the conduct of the affairs of Savage Enterprises through a pattern of racketeering activity. On information and belief, Defendants have used the telephone, email, or other communication facilities in furtherance of his other violations of the CSA, thus violating 21 U.S.C. § 843(b). Those crimes are racketeering activity under 18 U.S.C. § 1961(1)(D) and together form a pattern.

67.     The racketeering activities of Defendants directly and proximately injured the the Plaintiff and the Class' property by understating the percentage, type, or D9 THC in the cannabis which caused Plaintiff and the Class to engage an illegal transaction unknowingly.  Thus, Plaintiff and the Class were unknowingly possessing illegal substances under the Controlled Substances Act of 1971..

68.     Had Plaintiff known the D8 vape was illegal, she would not have purchased the Savage's product.

69.     RICO creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). Under 18 U.S.C. § 1962(d), it is "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Defendants agreed and conspired to violate 18 U.S.C. § 1962(c) by producing hemp products that contain more than .3% D9 THC by weight.

70.     An "enterprise" for purposes of RICO "includes any . . . partnership, corporation, association, or other legal entity." 18 U.S.C. § 1961(4). Each Defendant is a limited liability company or corporation is a RICO "enterprise."

71.     Savage manufactures D8 vapes for sale nationally, including Arkansas that are illegal under federal law, and materials necessary to produce the vape pen have been acquired in interstate commerce.

72.     Defendants have engaged in a pattern of racketeering activity in connection with the sale of D8 vapes. On information and belief, Defendants have used the telephone, email, or other communication facilities in furtherance of their drug conspiracy, thus violating 21 U.S.C. § 843(b). Those crimes are racketeering activity under 18 U.S.C. § 1961(1)(D) and together form a pattern.

73.     The racketeering activities of Defendants and John Doe 1-10 directly and proximately injured the Plaintiff and the Class' property by a scheme such that Defendants should disgorge the money Plaintiff and the Class into a common fund because there was an illegal contract.

### COUNT VI
### Violation of the Magnuson-Moss Warranty Act

74.     Plaintiff incorporates by reference the allegations of the preceding paragraphs.

75.     Plaintiff brings this claim individually and on behalf of the members of the Class.

76.     Defendant Savage's products are consumer products as defined in 15 U.S.C. § 2301.

77.     Plaintiff and the Class members are consumers as defined in 15 U.S.C. § 2301.

78.     Plaintiff and the Class purchased Defendant's products costing more than $5.00 and their individual claims are greater than $25.00 as required by 15 U.S.C. § 2302(e)

and 15 U.S.C. § 2310(d)(3)(A).

79.    Each Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

80.    In connection with the sale of its D8 products, each Defendant issued written warranties as defined in 15 U.S.C. § 2301(6) which warranted that the products conformed to Defendant's promise of less than .3% D9 THC by weight and that it did not contain synthetic D9 THC. Defendants warranted that the products were legal under both state and federal law.

81.    Each Defendant breached these written warranties because the D8 products did in fact contain an illegal amount of D9 THC.

82.    By reason of each Defendant's breach of the written warranties, each Defendant violated the statutory rights due Plaintiff and the Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq., thereby damaging Plaintiff and the Class members.

83.    Within a reasonable time after Plaintiff knew or should have known of such failure to conform, Plaintiff gave Defendant notice thereof.

## COUNT V ADPTA/ § 16-124-103

3.    Plaintiff realleges the foregoing as if fully set out herein.

4.    Plaintiff bought the Product within the three years preceding the filing of this lawsuit at Velvet Vapor in Arkansas.

5.    Plaintiff wanted to buy a legal D8 product, but, unbeknownst to him, he did not.

6.    Plaintiff used the product, then he was drug tested by DHS.

7.      Plaintiff did want synthetic D9, but she believes that was what was received.

8.      Plaintiff did not expect that the "D8" would contain more than .3% D9 by dry weight, rendering the Product illegal under federal law.

9.      Plaintiff bought the Product at, or exceeding, the retail price.

10.     Plaintiff relied on the representations identified here.

11.     Plaintiff would not have purchased the Product if she knew the representations were false and misleading.

12.     Plaintiff chose between Defendant's Product and other similar products which were represented similarly but which did not misrepresent their D9 content.

13.     The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

14.     Plaintiff intends to, seeks to, and will, purchase the Product again when each can do so with the assurance that Product's representations are legal.

15.     The Simple Defendants and Velvet Vapor, aided and abetted by the Lab, have violated the ADPTA and ACA § 16-124-103 by engaging in unlawful, fraudulent, and unfair conduct.

16.     Plaintiff reported this conduct to DHS more than six months prior to the filing of this action and has not used illegal drugs since.  Plaintiff personally disclosed to narcotics enforcement authorities, more than six (6) months before filing this Amended Complaint, all the information known to the individual drug user regarding his or her source of illegal drugs. Plaintiff has not used an illegal drug within the six (6) months before filing the action; and Plaintiff continues to remain free of the use of an illegal drug throughout the pendency of this action.

17.     Defendants engaged in unlawful conduct by violating the ADPTA and

Arkansas Drug Dealer Liability Act, as alleged throughout and incorporated here.

18.    As alleged in detail above, Defendants' labeling is false and misleading. Their labeling deceived Plaintiff and other reasonable consumers.

19.    Defendants' conduct caused substantial injury to Plaintiff because Plaintiff's husband was demoted in the military because of the D9 content. The harm to Plaintiff outweighs the public utility of Defendants' conduct (which is none). Inaccurately labeled and illegal D9 THC content has no public utility. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading labels only injure healthy competition and harm consumers.

20.    Plaintiff could not have reasonably avoided this injury. As alleged above, Defendants' misrepresentations and omissions were deceiving to reasonable consumers. Defendants' conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

21.    Defendants' conduct violated the public policy against false and misleading advertising, which is tethered to the ADPTA. Defendants' conduct also violated Arkansas' public policy in favor of consumer choice when it comes to cannabis products, and D9 THC content labeling in particular.

22.    For all prongs, Plaintiff saw, read and reasonably relied on the ] Defendants' misrepresentations and omissions when purchasing Defendants' Products.

23.    Defendants' misrepresentations were a determining factor in Plaintiff's purchase decisions.

24.    Plaintiff was injured as a direct and proximate result of Defendants' conduct because: (a) she would not have used Defendants' Products if she had known that the D9 THC content in the product was contained an illegal amount. As a result, Plaintiff was

damages and has suffered severe mental and emotional distress, as well as lost wages and

retirement benefits and a loss of economic or educational potential.

## COUNT VI

25.    Plaintiff realleges the foregoing as if fully set out herein.

26.    AMI-Civ. 1008, Arkansas Code Annotated section 16-116-101(a) and (b)

(Repl. 2016) provide:

(a) A supplier of a product is subject to liability in damages for harm to a person or to
property if:
(1) The supplier is engaged in the business of manufacturing, assembling, selling, leasing,
or otherwise distributing the product;
(2) The product was supplied by him or her in a defective condition that rendered it
unreasonably dangerous; and
(3) The defective condition was a proximate cause of the harm to a person or to property.
 (b) The provisions of subsection (a) of this section apply although the claiming party has
not obtained the product from or entered into any contractual relation with the supplier.

27.    Plaintiff purchased Savage products multiple times and was defrauded of her

money and thereby sustained damages.

28.    Savage, Wheeler, and Vapor were engaged in the business of manufacturing,

assembling, selling, or leasing, or otherwise distributing the D8 vape pen.

29.    The D8 Vape Pen was supplied by the Savage in a defective condition that

rendered it unreasonably dangerous because it contained too much D9 THC,

30.    The defective condition was a proximate cause of the plaintiff's damages.

Plaintiff was damaged and has suffered severe mental and emotional distress, as well as

lost wages and retirement benefits and a loss of economic or educational potential.

## COUNT VII

31.    Plaintiff realleges the foregoing against ACS as if fully set out herein.

32.    As Savage's agent, acting within the scope of the authority granted it by

Savage, Marin undertook a duty to test the product at issue in a competent manner and to

report accurate test results. Savage is sued under the doctrine of respondeat superior.

33.     Marin, acting as Simple's agent, failed to perform the test of the product using ordinary care.

34.     As a proximate cause of Marin's breaches, Plaintiff was damaged and has suffered severe mental and emotional distress, as well as lost wages and retirement benefits and a loss of economic or educational potential.

PRAYER FOR RELIEF
WHEREFORE, Plaintiffs pray for an order and judgment:

a.          Certifying the Class described above

b.          Awarding the Plaintiff and the Class three times the damages or disgorgement to their property that was caused by the RICO Defendants' racketeering activities.

c.          Awarding Plaintiffs their reasonable costs, including attorneys' fees incurred in bringing this litigation.

d.          Awarding Plaintiff compensatory and punitive damages;

e.          For all appropriate injunctive relief under the Arkansas Drug Dealer liability act;

f.          Granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

Luther Oneal Sutter
Ark. Bar No. 95031
SUTTER & GILLHAM, P.L.L.C.
P.O. Box 2012
Benton, AR 72018
501/315-1910 – OFFICE
501/315-1916 – FACSIMILE

Attorney for the Plaintiff
luthersutter.law@gmail.com

By:    /s/ Luther Oneal Sutter
          Luther Oneal Sutter, ABN 95031
          *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been served on 5th day of April, 2024, via ECF, upon counsel for the Defendant:

**Tim Giantinia**

By:      *Luther Sutter*
          Luther Oneal Sutter, Ark. Bar No. 95031
          luthersutter@yahoo.com