## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**DIANE NGUYEN, on behalf of herself**
**and all others similarly situated,**
    **PLAINTIFF,**

    **v.**        **CASE NO. 4:24-cv-00815-BSM**

**CHRISTOPHER G. WHEELER,**
**SAVAGE ENTERPRISES, PUR ISO**
**LABS, LLC KUNAL MANMEET,**
**LLC, D/B/A VAPOR PLANET,**
**MARIN ANALYTICS LLC and JOHN**
**DOES 1-10.**
    **DEFENDANT**

---

## THIRD AMENDED COMPLAINT

COMES NOW, Plaintiff, Diane Nguyen ("Plaintiff"), Individually and On Behalf of All Others Similarly Situated, by and through counsel, Sutter & Gillham, and, for this Third Amended Complaint, Plaintiff alleges:

## INTRODUCTION

**1.** This case arises from Defendants' unlawful manufacturing, certification, distribution, and sale of Delta-8 and Delta-9 THC vape pens that contain illegal levels of Delta-9 THC in violation of federal and state law. Plaintiff Diane Nguyen, on behalf of herself and similarly situated Class Members, brings this action to hold Defendants accountable for their deceptive practices, violations

of consumer protection statutes, and fraudulent schemes designed to mislead consumers into purchasing vape pens that are mislabeled, illegal, and unsafe.

2.      Defendants operate a coordinated enterprise that produces and markets vape pens under false pretenses, certifying their compliance with the Hemp Farming Act of 2018 while knowingly distributing vape pens that exceed the legal threshold for Delta-9 THC. Through false Certificates of Analysis (COAs), misleading marketing, and the evasion of regulatory oversight, Defendants have perpetrated a pattern of fraudulent and deceptive conduct, causing financial harm to Plaintiff and Class Members.

3.      Plaintiff and the Class seek redress for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), the Magnuson-Moss Warranty Act, the Arkansas Deceptive Trade Practices Act (ADTPA), and other applicable laws. Plaintiff seeks compensatory damages, treble damages, attorneys' fees, and injunctive relief to prevent further harm caused by Defendants' unlawful activities.

4.      The Court has personal jurisdiction over Defendants related to this matter as, *inter alia*, Defendants manufactured, distributed, and/or sold the Vape pens in this District.

5.      Each Defendant has established a business entity and presence in the state of Arkansas such that the assertion of jurisdiction is fair and reasonable under constitutional standards.

**6.**    Each Defendant has purposefully availed themselves of the privileges of conducting activities within Arkansas by doing business, entering contracts, or deliberately interacting with residents of Arkansas.

**7.**    Venue is proper in this District because the Retail Defendant sells the vape pens  in this District, and some of the actions giving rise to the claims occurred within this District.

**8.**    Each Defendant has established "minimum contacts" with Arkansas such that the assertion of jurisdiction is fair and reasonable under constitutional standards. Each Defendant's publication and distribution of Delta-8 vape pens within the State of Arkansas caused Plaintiff and the Class harm in the State of Arkansas, so this Court has specific personal jurisdiction. Thus, there is a direct connection between each Defendant's actions in the state and the legal dispute, which enhances the likelihood of jurisdiction. Relevant evidence and witnesses exist in Arkansas. Each Defendant's actions were foreseeable to impact the forum state, it may support jurisdiction.

## JURISDICTION & VENUE

**9.**    This action is brought under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 et seq., and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq, as well as under state law.

**10.**    Venue is proper in this Court because the acts and omissions giving rise

to Plaintiff's claims occurred, in substantial part, within Arkansas. The Defendants conduct substantial business in this District, and the alleged unlawful conduct occurred in this District.

## PARTIES

11.    Plaintiff Diane Nguyen is a resident and citizen of the State of Arkansas. Plaintiff purchased and consumed vape pens manufactured, distributed, or sold by the Defendants, relying on representations made regarding the legality and content of those vape pens .

12.    Defendant Christopher G. Wheeler is an individual who resides in the State of California, and at all relevant times was the CEO of Savage Enterprises, which manufactures, certifies, and distributes the vape pens  at issue in this action. In 2023, Chris Wheeler told Erin Dupree, who eventually was appointed by Gov. Tim Walz on Thursday to head the new state Office of Cannabis Management, that the vape pens  were legal, and he assured her that the vape pens  had been tested. Wheeler and other senior Savage management travelled the nation and assured consumers and vendors alike that its product was not marijuana, but they knew it was marijuana.

13.    "I have never knowingly sold any noncompliant product, and when I became aware of them I removed the vape pens  from inventory," DuPree said. "Conducting lawful business has been an objective of my business career. However,

it has become clear that I have become a distraction that would stand in the way of the important work that needs to be done." Dupree relied on Wheeler's statements, and he fooled her, an experienced hemp retailer.

14.     Defendant Savage Enterprises is a corporation organized under the laws of the State of California, with its principal place of business in California. Savage Enterprises is engaged in the manufacture, certification, and distribution of Delta-8 and Delta-9 THC vape pens .

15.     Defendant Pur Iso Labs, LLC, is a limited liability company organized under the laws of the State of Texas, with its principal place of business in Texas. Pur Iso Labs provided the distillate for the vape pens  at issue in this action.

16.     Defendant Kunal Manmeet, LLC, doing business as Vapor Planet, is a limited liability company organized under the laws of the State of Arkansas, with its principal place of business in Arkansas. Vapor Planet sold the vape pens  in question to Plaintiff.

17.     Defendant Marin Analytics LLC is a limited liability company organized under the laws of the State of California, with its principal place of business in California. Marin Analytics conducted testing and certification for the vape pens , providing Certificates of Analysis that Plaintiff alleges to be false and misleading.

18.     Defendants John Does 1-10 are as-yet unidentified individuals or

entities who participated in the manufacture, certification, distribution, or sale of the vape pens  at issue and whose identities will be ascertained during discovery.

## FACTUAL BACKGROUND

**19.**    This action arises out of Defendants' manufacture, marketing, certification, and sale of Delta-8 and Delta-9 THC vape pens , which are alleged to contain illegal levels of Delta-9 THC, in violation of the Hemp Farming Act of 2018 and corresponding federal and state laws.  Plaintiff bought the vape pens at 1008 E Oak Street #103, Conway, AR 72032 on multiple occasions.

**20.**    Congress passed the Controlled Substances Act (CSA) in 1970 as Title II of the Comprehensive Drug Abuse Prevention and Control Act to reduce drug abuse and illegitimate traffic in controlled substances. The CSA prohibits unauthorized production, distribution, or possession of controlled substances, including Delta-9 THC exceeding legal limits.

**21.**    Defendants, through their respective roles in the production and distribution chain, engaged in a scheme to misrepresent the legality, safety, and THC content of their vape pens  to consumers, including Plaintiff and Class Members.

**22.**    Specifically, Defendants marketed their vape pens  as compliant with the Hemp Farming Act of 2018, which prohibits vape pens  from containing more than 0.3% Delta-9 THC by dry weight. Contrary to these representations, laboratory testing of Defendants' vape pens  revealed that they contain levels of Delta-9 THC

exceeding the legal limit.

23.    Based in Irvine, California, Savage Enterprises was founded in 2014 by Christopher G. Wheeler and Matt Winters. Savage claims to provide consumer-centered and cost-effective vape pens , marketed as third-party lab-tested with quality assurance. Through its Delta Extrax brand, Savage sells Delta-10 THC cartridges, Delta-8 THC-infused vape pens , and other cannabinoid vape pens  over the internet, including to Arkansas.

24.    Defendant Savage Enterprises manufactured some of the vape pens Plaintiff purchased from VaporWorld in Conway, Arkansas. The vape pens  were sold after being distributed by an unnamed distributor, referred to here as John Doe 1.

25.    Acting at the direction of Savage Enterprises, Marin Analytics issued false Certificates of Analysis (COAs) for these vape pens . These COAs falsely stated that no Delta-9 THC was present, despite laboratory testing revealing otherwise.

26.    Delta-8 THC, scientifically known as delta-8-tetrahydrocannabinol, is a cannabis compound chemically similar to Delta-9 THC but less potent. Delta-8 THC binds to the body's endocannabinoid system, causing psychoactive effects, and is often synthesized from CBD due to its low natural concentration.

27.    To obtain Delta-8 THC in sufficient concentrations for commercial use,

manufacturers often produce Delta-9 THC in illegal amounts. Plaintiff's purchased vape pens   contained synthetic Delta-9 THC exceeding 0.3%, making them controlled substances under the CSA.

28.    Congress has classified Delta-9 THC exceeding 0.3% by weight as a Schedule I drug, deeming it to have a high potential for abuse. Under the CSA, manufacturing or distributing Delta-9 THC in amounts exceeding this threshold constitutes a serious felony.

29.    Defendants sold these mislabeled and unlawful vape pens  online and in retail stores, including in Arkansas. Plaintiff reasonably relied on Defendants' false representations and COAs, which were intended to mislead consumers about the legality and safety of the vape pens .

30.    Delta-8 THC, scientifically known as Delta-8-tetrahydrocannabinol, is a cannabis compound that has gained popularity due to its similarity to Delta-9 THC, the primary psychoactive compound in cannabis responsible for euphoria, relaxation, and sedation. Delta-8 THC is often referred to as "D-8" and can produce effects similar to those of Delta-9 THC, though typically less potent at comparable concentrations.

31.    Delta-8 THC occurs naturally in both marijuana and hemp, but its presence is minimal, requiring substantial amounts of plant material to extract significant quantities. As a result, Delta-8 THC is typically synthesized. Like Delta-

9 THC, Delta-8 THC binds to the body's endocannabinoid system, producing psychoactive effects. Chemically, Delta-8 and Delta-9 THC are similar, both featuring a double bond in their molecular structures. The distinction lies in the position of the double bond: Delta-8 has it on the eighth carbon atom, while Delta-9 has it on the ninth carbon atom.

32.     Due to the position of its double bond, Delta-8 THC binds to the endocannabinoid system differently, making it less potent than Delta-9 THC. To obtain Delta-8 THC in sufficient concentrations for vaping and to produce a "high," manufacturers illegally synthesize Delta-9 THC in amounts exceeding legal limits.

33.     Under the Hemp Farming Act of 2018 and the corresponding United States Farm Bill, vape pens containing more than 0.3% Delta-9 THC on a dry weight basis are unequivocally classified as marijuana and remain illegal under both federal and state law. Defendants' vape pens , including those purchased by Plaintiff, flagrantly violate these legal standards, rendering their sale and distribution illegal under the Controlled Substances Act of 1970 ("CSA") and the Arkansas Hemp Production Act of 2021 (A.C.A. § 2-15-501 et seq.).

34.     The Agricultural Improvement Act of 2018, Pub. L. No. 115-334, § 12619, and the Controlled Substances Act, 21 U.S.C. § 802(16)(B), clarify that vape pens exceeding 0.3% THC are classified as marijuana.

35.     The hemp plant is cultivated, then its leaves and other parts are

processed to create distillate. The distillate is then synthesized to create high levels of Delta-8 and Delta-9 THC. However, the Delta-9 cannabinoid in the resulting product is not adequately removed by the distiller due to the associated costs.

36.     Cannabinoid distillate typically contains high levels of cannabinoids and minimal amounts of other plant compounds, such as terpenes and flavonoids, making it a versatile ingredient for various cannabis vape pens . Defendants commonly use the distillate in the manufacturing of edibles, vape cartridges, topicals, tinctures, and other cannabis-infused vape pens  due to its consistent potency and customizable cannabinoid profiles.

37.     A Certificate of Analysis ("COA") is a detailed document issued by a third-party laboratory that verifies the contents and quality of a hemp product. It ensures compliance with legal standards and provides transparency to consumers. Critically, the COA confirms that the Delta-9 THC content does not exceed the 0.3% limit mandated by the 2018 Hemp Farm Bill Act.

38.     Hemp testing involves two methods: (1) dry weight for solids or plant-based vape pens , and (2) volume-based testing for liquids, such as vape oils. Advanced testing through processes such as High-Performance Liquid Chromatography (HPLC) or Gas Chromatography (GC) are designed to ensure precise volume-based testing. These two methods are to ensure that THC levels are accurately assessed. State and federal law permits some variability due to

environmental factors, but non-compliance with the 0.3% threshold is not excused.

39.     Federal guidelines, including USDA's Sampling Guidelines for Hemp and Laboratory Testing Guidelines, outline sampling, drying, and testing procedures. In dry weight testing, drying removes moisture, ensuring THC concentration is based solely on cannabinoids. Liquid-based vape pens are tested by volume, with the same 0.3% limit applied.

40.     The liquid in the vape devices, commonly referred to as vape oil, is shelf-stable, meaning that the Delta-9 THC cannabinoid levels measured by independent laboratories remain consistent from the time of testing to the time the product was packaged by manufacturers and sold to distributors and retailers for resale to consumers. Moreover, the vape oil in these devices is not derived from natural agricultural processes but is a synthetic product. The Delta-9 THC cannabinoid in vape oil is artificially synthesized through a manufacturing process, highlighting its synthetic and unlawful nature.

41.     An illegal or noncompliant product is a product that contains more than 0.3% Delta-9 THC.

42.     Although the United States Department of Justice has recently refrained from prosecuting violations of federal cannabis laws, this does not alter the legality of such actions under federal law, nor does it deprive individuals of their judicially enforceable rights. The Department of Justice cannot amend federal statutes, and

cannabis remains illegal under federal law, as it has been since the passage of the Controlled Substances Act in 1970.

43.     Engaging in the sale of cannabis vape pens containing more than 0.3% Delta-9 THC by dry weight or that contain synthetic Delta-9 THC is illegal under state and federal law. Individuals or entities that engage in such illegal activities must be required to disgorge all ill-gotten profits and return any monies obtained from these unlawful transactions to prevent unjust enrichment and protect the public interest.

44.     Independent laboratory testing confirmed that the Delta-9 THC content in vape pens manufactured and distributed by Defendant Savage Enterprises significantly exceeded the legal limit of 0.3% Delta-9 THC. Specifically:

45.     a. The strain "Tropicana Cookies," manufactured by Savage, was found to contain 6.45% Delta-9 THC upon re-testing.

46.     b. The strain "Banana Crack," also manufactured by Savage, was found to contain 24.72% Delta-9 THC upon re-testing.

47.     These results demonstrate a gross violation of federal and state laws governing THC content in cannabis-derived vape pens . Despite the presence of these illegal levels of Delta-9 THC, the vape pens were marketed, certified, and sold as compliant with the Hemp Farming Act of 2018 and other regulatory standards.

## CLASS ALLEGATIONS

48.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and a Class of similarly situated individuals who purchased the Delta-8 and Delta-9 THC vape pens at issue in this case.

49.    Two Classes are defined as follows:

A. **All persons in the United States who, within the applicable statute of limitations period, purchased Delta-8 or Delta-9 THC vape pens manufactured, distributed, or sold by Defendants that contained more than 0.3% Delta-9 THC or were falsely labeled as compliant with federal and state laws.**

B. **All persons in Arkansas who, within the applicable statute of limitations period, purchased Delta-8 or Delta-9 THC vape pens manufactured, distributed, or sold by Defendants that contained more than 0.3% Delta-9 THC or were falsely labeled as compliant with federal and state laws.**

50.    Excluded from the Class are:

a. Defendants, their employees, officers, directors, legal representatives,

and agents;

**b.** Any governmental entities;

**c.** Any judicial officers presiding over this matter, their staff, and their immediate family members; and

**d.** Any persons or entities that timely opt out of the proposed Class and are allowed to do so..

51.    The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class Members is unknown at this time, it is believed to exceed thousands of individuals who purchased the vape pens in question.

52.    There are questions of law and fact common to the Class, including, but not limited to, the following:

**a.** Whether Defendants' vape pens contained illegal levels of Delta-9 THC;

**b.** Whether Defendants falsely labeled or certified their vape pens as compliant with federal and state laws;

**c.** Whether Defendants engaged in a pattern of racketeering activity under RICO;

**d.** Whether Defendants' conduct violated the Magnuson-Moss Warranty Act;

**e.** Whether Defendants' conduct caused harm to Plaintiff and Class Members; and

**f.** The appropriate measure of damages and other relief to which Plaintiff and Class Members are entitled.

53.    Plaintiff's claims are typical of the claims of the Class Members, as they arise from the same course of conduct by Defendants and are based on the same legal theories.

54.    Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in class action litigation, and Plaintiff has no interests antagonistic to those of the Class.

55.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Individual litigation of the claims of all Class Members would be economically unfeasible and procedurally impracticable. Furthermore, individual litigation would risk inconsistent or contradictory judgments and would unnecessarily burden the court system.

56.    The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants. A class action would also conserve judicial resources and provide a uniform adjudication of the claims.

57.    Defendants have acted or refused to act on grounds generally applicable

to the Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole.

## COUNT I: VIOLATION OF 18 U.S.C. § 1962(C)

**58.** Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

**59.** Plaintiff brings this claim on behalf of herself and the Class against all Defendants under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c).

**60.** At all relevant times, Defendants constituted an enterprise engaged in and whose activities affected interstate commerce, as defined by 18 U.S.C. § 1961(4).

**61.** Defendants conducted and participated in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and (5), consisting of multiple instances of mail fraud, wire fraud, and violations of the Controlled Substances Act (CSA), 21 U.S.C. §§ 801 et seq.

**62.** Defendants engaged in an ongoing pattern of racketeering activity by manufacturing, distributing, certifying, and selling Delta-8 and Delta-9 THC vape pens that were mislabeled, misrepresented, and contained illegal levels of Delta-9 THC in violation of federal law.

**63.** Defendants used false Certificates of Analysis (COAs) and deceptive

marketing materials to mislead consumers into believing their vape pens were lawful and compliant with federal and state regulations, despite containing Delta-9 THC exceeding the legal threshold of 0.3% by weight.

64.    Defendants knowingly and intentionally engaged in fraudulent schemes to mislead Plaintiff and the Class into purchasing their vape pens , causing Plaintiff and the Class to suffer economic losses and other damages.

65.    Specifically, Defendants committed acts of mail fraud, in violation of 18 U.S.C. § 1341, by sending false COAs and promotional materials via mail to Plaintiff, Class Members, and distributors nationwide.

66.    Defendants also committed acts of wire fraud, in violation of 18 U.S.C. § 1343, by using the internet and electronic communications to disseminate false and misleading COAs and marketing materials to Plaintiff, Class Members, and distributors nationwide.

67.    The predicate acts of mail and wire fraud were committed as part of Defendants' scheme to defraud consumers and regulatory authorities and to promote the sale of illegal Delta-8 and Delta-9 THC vape pens .

68.    By engaging in the aforementioned conduct, Defendants directly and indirectly conducted and participated in the affairs of the enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

69.    As a direct and proximate result of Defendants' racketeering activities

and violations of 18 U.S.C. § 1962(c), Plaintiff and Class Members have suffered damages, including but not limited to the purchase price of the illegal vape pens , costs of testing, and emotional distress.

70.    Pursuant to 18 U.S.C. § 1964(c), Plaintiff and Class Members are entitled to recover treble damages, costs, and reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff, on behalf of herself and the Class, respectfully requests that this Court enter judgment in her favor and against Defendants as follows:

    **a.**  Awarding compensatory, consequential, and treble damages to Plaintiff and the Class in an amount to be determined at trial;

    **b.**  Awarding Plaintiff and the Class their reasonable attorneys' fees and costs of suit, including interest thereon; and

    **c.**  Granting such other and further relief as this Court deems just and proper.

## COUNT II: VIOLATION OF 18 U.S.C. § 1962(D) AGAINST ALL RICO DEFENDANTS

71.    Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

72.    Plaintiff brings this claim on behalf of herself and the Class against all

Defendants under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(d).

**73.** Section 1962(d) of RICO provides that it is unlawful for any person to conspire to violate any of the provisions of Section 1962(c).

**74.** Defendants, acting in concert and in furtherance of their unlawful enterprise, knowingly and willfully conspired and agreed to violate Section 1962(c) through a pattern of racketeering activity, as described above.

**75.** Defendants and their co-conspirators shared a common purpose: to defraud consumers by misrepresenting the legality and safety of their Delta-8 and Delta-9 THC vape pens , to profit from the sale of these vape pens , and to evade regulatory scrutiny.

**76.** Each Defendant knowingly participated in the conspiracy by agreeing to engage in fraudulent schemes, including the use of false Certificates of Analysis (COAs), misleading marketing materials, and the distribution of vape pens containing illegal levels of Delta-9 THC.

**77.** The conspiracy was furthered through numerous overt acts, including but not limited to:

    **a.** Manufacturing, certifying, and distributing Delta-8 and Delta-9 THC vape pens  containing more than 0.3% Delta-9 THC;

    **b.** Disseminating false and misleading COAs and promotional materials

via mail and wire communications to Plaintiff, Class Members, and distributors nationwide;

**c.** Violating the Controlled Substances Act (CSA) by producing and distributing synthetic Delta-9 THC and vape pens exceeding federal THC limits; and

**d.** Concealing the true nature of the vape pens to evade regulatory enforcement.

**78.** As a direct and proximate result of Defendants' conspiracy and violations of Section 1962(d), Plaintiff and Class Members have suffered damages, including but not limited to the purchase price of the illegal vape pens , costs of testing, and emotional distress.

**79.** Pursuant to 18 U.S.C. § 1964, Plaintiff and Class Members are entitled to recover treble damages, costs, and reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff, on behalf of herself and the Class, respectfully requests that this Court enter judgment in her favor and against Defendants as follows:

**a.** Awarding compensatory, consequential, and treble damages to Plaintiff and the Class in an amount to be determined at trial;

**b.** Awarding Plaintiff and the Class their reasonable attorneys' fees and costs of suit, including interest thereon; and

    **c.** Granting such other and further relief as this Court deems just and proper.

## COUNT III: VIOLATION OF 18 U.S.C. § 1962(C)

**80.** Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

**81.** Plaintiff brings this claim on behalf of herself and the Class against all Defendants under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c).

**82.** Defendants and their co-conspirators constituted an enterprise engaged in and whose activities affected interstate commerce, as defined by 18 U.S.C. § 1961(4).

**83.** Defendants conducted and participated in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and (5), consisting of multiple violations of the Controlled Substances Act (CSA), 21 U.S.C. §§ 801 et seq., as well as mail fraud and wire fraud.

**84.** Specifically, Defendants knowingly manufactured, certified, distributed, and sold Delta-8 and Delta-9 THC vape pens containing illegal levels of Delta-9 THC in violation of federal law. These vape pens were falsely labeled and marketed as compliant with state and federal laws, including the Hemp Farming Act of 2018.

**85.** Defendants engaged in an ongoing scheme to mislead Plaintiff and Class Members by:

    **a.** Disseminating false Certificates of Analysis (COAs) to certify the legality and safety of their vape pens ;

    **b.** Marketing and selling vape pens containing more than 0.3% Delta-9 THC as legal and compliant with the Hemp Farming Act of 2018;

    **c.** Using mail and electronic communications to distribute false information and to facilitate the sale of illegal marijuana.

**86.** Defendants' conduct constitutes mail fraud, in violation of 18 U.S.C. § 1341, and wire fraud, in violation of 18 U.S.C. § 1343, as they used mail and electronic communications to execute their scheme to defraud Plaintiff, Class Members, and regulatory authorities.

**87.** Additionally, Defendants' manufacturing and distribution of Delta-9 THC vape pens containing illegal levels of THC constitute violations of the CSA, which explicitly prohibits such activities.

**88.** By engaging in the aforementioned conduct, Defendants directly and indirectly conducted and participated in the affairs of the enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

**89.** As a direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff and Class Members have suffered

damages, including but not limited to the purchase price of the illegal vape pens , costs of testing, and emotional distress.

90.    Pursuant to 18 U.S.C. § 1964(c), Plaintiff and Class Members are entitled to recover treble damages, costs, and reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff, on behalf of herself and the Class, respectfully requests that this Court enter judgment in her favor and against Defendants as follows:

  **a.** Awarding compensatory, consequential, and treble damages to Plaintiff and the Class in an amount to be determined at trial;

  **b.** Awarding Plaintiff and the Class their reasonable attorneys' fees and costs of suit, including interest thereon; and

  **c.** Granting such other and further relief as this Court deems just and proper.

### COUNT IV: VIOLATION OF 18 U.S.C. § 1962(D)

91.    Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

92.    Plaintiff brings this claim on behalf of herself and the Class against all Defendants under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(d).

93.    Section 1962(d) of RICO provides that it is unlawful for any person to conspire to violate any of the provisions of Section 1962(c).

94.    Defendants, acting in concert and in furtherance of their unlawful enterprise, knowingly and willfully conspired and agreed to violate Section 1962(c) through a pattern of racketeering activity, as described above.

95.    Defendants and their co-conspirators shared a common purpose: to defraud consumers by misrepresenting the legality and safety of their Delta-8 and Delta-9 THC vape pens , to profit from the sale of these vape pens , and to evade regulatory scrutiny.

96.    Each Defendant knowingly participated in the conspiracy by agreeing to engage in fraudulent schemes, including the use of false Certificates of Analysis (COAs), misleading marketing materials, and the distribution of vape pens containing illegal levels of Delta-9 THC.

97.    The conspiracy was furthered through numerous overt acts, including but not limited to:

   **a.** Manufacturing, certifying, and distributing Delta-8 and Delta-9 THC vape pens  containing more than 0.3% Delta-9 THC;

   **b.** Disseminating false and misleading COAs and promotional materials via mail and wire communications to Plaintiff, Class Members, and distributors nationwide;

    **c.** Violating the Controlled Substances Act (CSA) by producing and distributing synthetic Delta-9 THC and vape pens exceeding federal THC limits; and

    **d.** Concealing the true nature of the vape pens to evade regulatory enforcement.

98.    As a direct and proximate result of Defendants' conspiracy and violations of Section 1962(d), Plaintiff and Class Members have suffered damages, including but not limited to the purchase price of the illegal vape pens , costs of testing, and emotional distress.

99.    Pursuant to 18 U.S.C. § 1964(c), Plaintiff and Class Members are entitled to recover treble damages, costs, and reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff, on behalf of herself and the Class, respectfully requests that this Court enter judgment in her favor and against Defendants as follows:

    **a.** Awarding compensatory, consequential, and treble damages to Plaintiff and the Class in an amount to be determined at trial;

    **b.** Awarding Plaintiff and the Class their reasonable attorneys' fees and costs of suit, including interest thereon; and

    **c.** Granting such other and further relief as this Court deems just and

proper.

## COUNT V: VIOLATION OF 18 U.S.C. § 1962(C)

**100.**    Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

**101.**    Plaintiff brings this claim on behalf of herself and the Class against all Defendants under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c).

**102.**    Defendants and their co-conspirators constituted an enterprise engaged in and whose activities affected interstate commerce, as defined by 18 U.S.C. § 1961(4).

**103.**    Defendants conducted and participated in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and (5), consisting of multiple violations of the Controlled Substances Act (CSA), 21 U.S.C. §§ 801 et seq., as well as mail fraud and wire fraud.

**104.**    Specifically,    Defendants    knowingly    manufactured,    certified, distributed, and sold Delta-8 and Delta-9 THC vape pens  containing illegal levels of Delta-9 THC in violation of federal law. These vape pens  were falsely labeled and marketed as compliant with state and federal laws, including the Hemp Farming Act of 2018.

**105.**    Defendants engaged in an ongoing scheme to mislead Plaintiff and

Class Members by:

    **a.** Disseminating false Certificates of Analysis (COAs) to certify the legality and safety of their vape pens ;

    **b.** Marketing and selling vape pens containing more than 0.3% Delta-9 THC as legal and compliant with the Hemp Farming Act of 2018;

    **c.** Using mail and electronic communications to distribute false information and to facilitate the sale of illegal vape pens .

**106.** Defendants' conduct constitutes mail fraud, in violation of 18 U.S.C. § 1341, and wire fraud, in violation of 18 U.S.C. § 1343, as they used mail and electronic communications to execute their scheme to defraud Plaintiff, Class Members, and regulatory authorities.

**107.** Additionally, Defendants' manufacturing and distribution of Delta-9 THC vape pens  containing illegal levels of THC constitute violations of the CSA, which explicitly prohibits such activities.

**108.** By engaging in the aforementioned conduct, Defendants directly and indirectly conducted and participated in the affairs of the enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

**109.** As a direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff and Class Members have suffered damages, including but not limited to the purchase price of the illegal vape pens ,

costs of testing, and emotional distress.

110.    Pursuant to 18 U.S.C. § 1964(c), Plaintiff and Class Members are entitled to recover treble damages, costs, and reasonable attorneys' fees from Defendants.

WHEREFORE, Plaintiff, on behalf of herself and the Class, respectfully requests that this Court enter judgment in her favor and against Defendants as follows:

  **a.**  Awarding compensatory, consequential, and treble damages to Plaintiff and the Class in an amount to be determined at trial;

  **b.**  Awarding Plaintiff and the Class their reasonable attorneys' fees and costs of suit, including interest thereon; and

  **c.**  Granting such other and further relief as this Court deems just and proper.

## COUNT VI: VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT

111.    Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

112.    Plaintiff brings this claim on behalf of herself and the Class against all Defendants under the Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. § 2301 et seq.

113.    The MMWA provides a private right of action for consumers who are

damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under a written warranty, implied warranty, or service contract. 15 U.S.C. § 2310(d).

114.    Defendants, as manufacturers, suppliers, and distributors of the Delta-8 and Delta-9 THC vape pens  purchased by Plaintiff and Class Members, provided written and implied warranties that their vape pens  complied with federal and state laws, including the Hemp Farming Act of 2018, and were safe and legal for consumption.

115.    These representations and warranties were material to Plaintiff's and Class Members' decisions to purchase Defendants' vape pens  and formed the basis of the bargain.

116.    Defendants breached these warranties by manufacturing, distributing, certifying, and selling vape pens  containing Delta-9 THC levels exceeding 0.3%, rendering them illegal under the Controlled Substances Act and other applicable laws.

117.    The vape pens  sold to Plaintiff and Class Members failed to conform to the warranties made by Defendants, as the vape pens  were mislabeled, unsafe, and illegal.

118.    As a direct and proximate result of Defendants' breaches of warranties, Plaintiff and Class Members have suffered damages, including but not limited to the

purchase price of the vape pens , costs of testing, and emotional distress.

119.    Pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and Class Members are entitled to recover actual damages, attorneys' fees, and costs, and any other relief the Court deems appropriate.

WHEREFORE, Plaintiff, on behalf of herself and the Class, respectfully requests that this Court enter judgment in her favor and against Defendants as follows:

   a.  Awarding compensatory and consequential damages to Plaintiff and the Class in an amount to be determined at trial;

   b.  Awarding Plaintiff and the Class their reasonable attorneys' fees and costs of suit, including interest thereon; and

   c.  Granting such other and further relief as this Court deems just and proper.

## COUNT VII: VIOLATION OF ARKANSAS DECEPTIVE TRADE PRACTICES ACT (ADTPA) (§ 16-124-103)

120.    Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

121.    Plaintiff brings this claim individually against all Defendants under the Arkansas Deceptive Trade Practices Act (ADTPA), Ark. Code Ann. § 16-124-103.

122.    The   ADTPA   prohibits,   among   other   things,   engaging   in

unconscionable, false, or deceptive acts or practices in business, commerce, or trade.

**123.** Defendants violated the ADTPA by manufacturing, certifying, distributing, and selling Delta-8 and Delta-9 THC vape pens containing illegal levels of Delta-9 THC and falsely representing that the vape pens were legal, safe, and compliant with state and federal laws.

**124.** Defendants knowingly and willfully misrepresented and omitted material facts about their vape pens, including but not limited to the legality and THC content of their Delta-8 and Delta-9 THC vape pens, to Plaintiff and Class Members.

**125.** Defendants' conduct caused actual harm to Plaintiff and Class Members, including economic losses resulting from the purchase of illegal and unsafe vape pens.

**126.** Defendants' false and deceptive practices were intended to mislead consumers, including Plaintiff and others, and to induce them to purchase vape pens they otherwise would not have purchased.

**127.** As a direct and proximate result of Defendants' violations of the ADTPA, Plaintiff and others have suffered damages, including but not limited to the purchase price of the vape pens, costs of testing, and emotional distress.

**128.** Pursuant to Ark. Code Ann. § 4-88-113(f), Plaintiff is entitled to recover actual damages, attorneys' fees, and costs, and any other relief the Court deems

appropriate.

**129.** WHEREFORE, Plaintiff, on behalf of herself and the Class, respectfully requests that this Court enter judgment in her favor and against Defendants as follows:

    **a.** Awarding compensatory and consequential damages to Plaintiff in an amount to be determined at trial;

    **b.** Awarding Plaintiff her reasonable attorneys' fees and costs of suit, including interest thereon;

    **c.** Enjoining Defendants from continuing their deceptive trade practices; and

    **d.** Granting such other and further relief as this Court deems just and proper.

## COUNT VIII: VIOLATION OF AR CODE § 16-116-101

**130.** Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

**131.** Plaintiff brings this claim on behalf of herself and the Class against all Defendants under Arkansas Code § 16-116-101.

**132.** Plaintiff and the Class sustained damages

**133.** Each Defendant was engaged in the business of manufacturing, assembling, selling, or leasing, or otherwise distributing the vape pens.

**134.** The vape pens were supplied by each defendant to the Plaintiff and the Class in a defective condition that rendered it unreasonably dangerous

**135.** The defective condition was a proximate cause of the Class and Plaintiff's damages. AMI-Civ. 1008.

**136.** A finding of liability on the part of the manufacturer is not necessary for a supplier to be held liable for a defective product. *Madden v. Mercedes-Benz USA, Inc.*, 2016 Ark. App. 45, 481 S.W.3d 455. Bank of the Ozarks, Inc. v. Ford Motor Co., 2020 Ark. App. 231, ¶¶ 9-10, 599 S.W.3d 718, 723-24 (Ct. App.).

**137.** Defendants violated Arkansas Code § 16-116-101 by manufacturing, certifying, distributing, and selling Delta-8 and Delta-9 THC vape pens containing illegal levels of Delta-9 THC, in violation of the Controlled Substances Act and other applicable federal and state laws.

**138.** Defendants' conduct directly and proximately caused harm to Plaintiff and Class Members, including economic losses resulting from the purchase of illegal and unsafe vape pens .

**139.** As a result of Defendants' violations of Arkansas Code § 16-116-101, Plaintiff and Class Members are entitled to recover actual damages, costs, and attorneys' fees.

**140.** Pursuant to Arkansas Code § 16-116-101, Plaintiff and Class Members seek compensatory damages, attorneys' fees, and any other relief the Court

deems appropriate.

WHEREFORE, Plaintiff, on behalf of herself and the Class, respectfully requests that this Court enter judgment in her favor and against Defendants as follows:

  **a.** Awarding compensatory damages to Plaintiff and the Class in an amount to be determined at trial;

  **b.** Awarding Plaintiff and the Class their reasonable attorneys' fees and costs of suit, including interest thereon; and

  **c.** An Order granting the creation of a common fund

  **d.** Granting such other and further relief as this Court deems just and proper.

## COUNT IX: RESCISSION

**141.** Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

**142.** Plaintiff brings this claim on behalf of herself and the Class against all Defendants under Arkansas Code § 16-116-101.

**143.** Plaintiff and the Class was each an innocent purchaser. She would not have knowingly bought marijuana. Thus, Plaintiff and the Class seek rescission and the creation of a common fund, as well as certification under Rule 23(b)(2).

**144.**　　It is a general rule that, if the contract be executed and both parties *in pari delicto,* neither of them can recover from the other the moneys bet. But, where the action is in disaffirmance of such a contract, and, instead of endeavoring to enforce it, presumes it to be void, and seeks to prevent the defendant from retaining the benefit which he derived from an unlawful act, then it is consonant to the spirit and policy of the law that he should recover. Williams v. Kagy, 176 Ark. 484, 487-88, 3 S.W.2d 332, 334 (1928).  Here, the parties are not *in pari delicto.*

WHEREFORE, Plaintiff, on behalf of herself and the Class, respectfully requests that this Court enter judgment in her favor and against Defendants as follows:

    **a.** Awarding compensatory damages to Plaintiff and the Class in an amount to be determined at trial;

    **b.** Awarding Plaintiff and the Class their reasonable attorneys' fees and costs of suit, including interest thereon; and

    **c.** Recissision and the creation of a common fund

    **d.** Granting such other and further relief as this Court deems just and proper.

                         Respectfully submitted,

**SUTTER & GILLHAM, P.L.L.C.**

Attorneys at Law

1501 N. Pierce Street, Ste. 105

Little Rock, AR 72207

501/315-1910  Office

501/315-1916  Facsimile

Counsel for the Plaintiff


By:     */s/ Luther Oneal Sutter*  _____

Luther Oneal Sutter, ARBN 95031

luthersutter.law@gmail.com


By:     */s/ Lucien R. Gillham*  _____

Lucien R. Gillham, ARBN 99199

lucien.gillham@gmail.com